·LLEWELLYN G. FARNUM *vs.* BANKERS & SHIPPERS INSURANCE COMPANY OF NEW YORK.

Worcester.  September 27, 1932. — January 3, 1933.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & DONAHUE, JJ.

*Practice, Civil,* Exceptions, Requests, rulings and instructions, Charge to jury. *Insurance,* Description of insured, Against theft.  *Larceny. Contract,* What constitutes, Parties, Validity.  *Trade Name.*

A mere objection to action by a trial judge does not give this court jurisdiction on a bill of exceptions to review such action: the objecting party must also save an exception thereto.

It *was stated* that, at the trial of an action upon a policy of insurance against theft, the questions of the sufficiency of the evidence as to theft and of the plaintiff's right to maintain the action cannot be raised by way of a request for instructions.

There was no merit in a contention that the charge to a jury at the trial of an action was a charge upon the facts in violation of G. L. (Ter. Ed.) c. 231, § 81, where, in the course of the charge, the judge instructed the jury, "Make sure it is your own mind controls, and you do not endeavor in any way to infer from anything I said what might or might not be my opinion, having in mind that the law forbids me to express any opinion, or to in any way influence your minds."

At the trial of an action upon a policy of insurance against theft of a certain automobile, there was evidence for the plaintiff, the owner of the automobile, that, he having become helpless by reason of intoxication, a certain person drove him in the automobile to the plaintiff's home, where, considerably sobered, the plaintiff paid·such person, went into his house and lay down; that the automobile was left in the yard, the plaintiff retaining the key; that about half an hour thereafter the automobile was seen going out of the yard at a high rate of speed; that shortly thereafter the automobile, driven by the person who had brought the plaintiff home, was wrecked by reason of striking a tree; and that the plaintiff did not give such person per-

mission to drive the automobile away. There was evidence for the defendant that the plaintiff authorized such person to drive himself to his home in the automobile. By the terms of the policy, there were excepted from the coverage thereof thefts by a person in the "service or employment" of the insured and by any one to whom he "voluntarily parts with title and/or possession." *Held,* that

(1) It was proper to instruct the jury that any employment by the plaintiff of the person who brought him home terminated with the payment to him at the plaintiff's home;

(2) An inference was warranted that such person drove the automobile away from the plaintiff's home with intent to steal it;

(3) The question, whether such person stole the automobile, was for the jury,

(4) A verdict for the plaintiff was warranted.

At the trial of an action upon a policy of insurance against theft of an automobile issued to "Uxbridge Auto Company," there was evidence that the plaintiff was the owner of the automobile, that he did business under said trade name, that he was in possession of the policy and that he had not filed a business certificate as required by G. L. (Ter. Ed.) c. 110, § 5. The circumstances surrounding the procuring and issuance of the policy did not appear, and there was nothing therein to show that the name "Uxbridge Auto Company" was other than a trade name. *Held,* that

(1) A finding was warranted that the policy was issued to and the contract of insurance made with the plaintiff;    .

(2) The plaintiff's failure to file the business certificate did not render the contract of insurance void.

CONTRACT upon a policy of insurance. Writ dated October 8, 1931.

In the Superior Court, the action was tried before *O'Connell,* J. Material portions of the policy and material evidence and portions of the judge's charge to the jury are described in the opinion. The witness Grenier, whose testimony is described in the opinion, was called by the defendant. There was a verdict for the plaintiff in the sum of $2,450. The defendant alleged exceptions.

*F. P. Ryan & F. M. Ryder,* for the defendant, submitted a brief.

*L. E. Stockwell,* for the plaintiff.

WAIT, J. The plaintiff brought suit alleging that, on July 7, 1931, his automobile was stolen, and that the defendant, which had issued to Uxbridge Auto Company a policy insuring the owner of the car against "theft, robbery and pilferage," was liable to him. After verdict for the

plaintiff, the case is before us upon the defendant's bill of exceptions. The bill is not clear. It is difficult to ascertain what exceptions were claimed. An objection is not an exception. Unless exception is claimed, an objection to a ruling, a direction or a course of conduct on the part of the trial judge will not support jurisdiction in this court on bill of exceptions to examine and revise.

There was evidence as follows: The plaintiff owned and carried on a garage business at Uxbridge under the name of Uxbridge Auto Company. His wife had owned and carried on the business under that name until 1925, and had filed the certificate required by G. L. (Ter. Ed.) c. 110, § 5, from one who does business under a title other than his real name. The plaintiff took over the business in 1925; but did not file the required certificate. He owned a Lincoln club roadster, model 1929. The defendant insured this automobile under a policy which recited as the name of the assured, Uxbridge Auto Company. The plaintiff's name does not appear in the policy. It assured to a limit of $3,000 against "theft, robbery and pilferage," defining them as "Theft, Robbery and Pilferage (BROAD FORM): Theft, Robbery and Pilferage, excepting by any person or persons in the Assured's household or in the Assured's service or employment, whether the theft, robbery or pilferage occurs during the hours of such service or employment or not, and excepting by any person, or agent thereof, or by the agent of any firm or corporation to which person, firm or corporation the Assured, or any one acting under express or implied authority of the Assured, voluntarily parts with title and/or possession, whether or not induced so to do by any fraudulent scheme, trick, device or false pretense; and excepting in any case, other than the theft of the entire automobile described herein, the theft, robbery or pilferage of tools or repair equipment. This policy does not insure against the wrongful conversion, embezzlement or secretion by a mortgagor, vendee, lessee or other person in lawful possession of the insured property under a mortgage, conditional sale, lease or other contract or agreement, whether written or verbal." In the early morn-

ing hours of July 7, 1931, the plaintiff drove his car to a
druggist's store in Uxbridge.  He was intoxicated when
he entered the store and shortly became helpless.  Persons
there present put him in his car and persuaded one Grenier
to drive him to his house or to drive him about in the air.
Grenier undertook this; drove to Woonsocket and about;
and about 5 A.M. delivered the plaintiff, considerably sobered,
at his house in Uxbridge.  The plaintiff paid Grenier; and
went into his house and lay down.  Grenier testified that
the plaintiff authorized him to drive himself to his own
home; that he set out, drove to a "diner" where he was
employed, and, after a short stay there, drove on — but
not on his homeward way — to Linwood some two miles
from the plaintiff's house; then he turned, and, as he
was speeding back, the car skidded, struck a tree and was
ruined.  Grenier was hurt seriously.  The plaintiff testified
that he did not give Grenier any such permission but,
instead, the car was left in the plaintiff's front yard and
he retained the key.  The plaintiff's wife testified that
about half an hour after her husband's return, she heard
the noise of a car and, going to a window, saw the plaintiff's
car going out of the yard at a high speed.  Her husband
was asleep on a sofa.  He woke.  Some minutes after a
crash was heard.  Later a message informed them that the
car had been wrecked and Grenier had been injured.

The defendant contends that here is not sufficient evi-
dence of theft within the definition of the policy, nor of
right to maintain this action.  The question was not raised
by motion in writing and is not open upon a request for
instructions.  *Patton* v. *DeViney,* 259 Mass. 100, 102.  In
substance, however, it is before us upon exceptions to the
denial of certain requests for instructions and to portions
of the charge.  There was no error in the rules of law stated
in the charge; the requests were given in substance; and
we see no evidence of charging upon the facts.  The judge
carefully warned the jurors that they must reach their
own conclusion on the facts unaffected by what they sup-
posed the judge thought.  "Make sure it is your own mind
controls, and you do not endeavor in any way to infer

from anything I said what might or might not be my opinion, having in mind that the law forbids me to express any opinion, or to in any way influence your minds." This was sufficiently favorable to the defendant, and must be taken to have guarded adequately against prejudice from anything objected to by it.

Whether or not Grenier stole the car was matter of fact for the jury. Different minds might well reach different conclusions. If Grenier had permission from the plaintiff to use the car and took it, relying on the permission, intending to return it, then even if he went beyond the authority given and intentionally used the car in an unauthorized way there was no theft. On the other hand, if he took it without permission intending not to return it to the plaintiff, then there was a theft, even if, afterwards, Grenier changed his mind. If it were believed that a half hour after the plaintiff had gone into his house leaving the car where he usually left it late at night, Grenier came back, took the car, and swiftly drove it away, we cannot properly say an inference that it was taken with intent to steal is unfounded. *Bloom* v. *Ohio Farmers Ins. Co.* 255 Mass. 528. In substance that is the instruction given. The judge instructed the jurors that they could not merely conjecture with regard to Grenier's intent. They must find in the facts evidence impelling them to a conviction, not a guess, that he meant to deprive the plaintiff of his car. The judge's language was not quite so definite; but we think the jurors must have understood that more than conjecture was essential to a finding for the plaintiff.

Although the defendant objected to the language of the charge with reference to the termination of any contractual service by Grenier, it did not claim an exception. Even if we could consider that a right was preserved, in view of the state of the evidence, we should find no prejudicial error in the instruction that any employment terminated with the payment at the plaintiff's house.

There was evidence that the plaintiff was owner of the car insured and that he did business under the name of Uxbridge Auto Company. The bill of exceptions does not

set out the circumstances attending the procuring and execution of the policy. It is unquestionably the law that one who supposes he is contracting with a corporation is not bound by a contract, ostensibly of the corporation, to an individual who owns the corporation if there is one in existence, or who does business under a corporate name if none exists. *Werlin* v. *Equitable Surety Co.* 227 Mass. 157. On the other hand, in the absence of fraud, an individual may contract in any name which he chooses to use, *William Gilligan Co.* v. *Casey*, 205 Mass. 26, and cases cited at page 31, *Merrimac Chemical Co.* v. *Moore*, 279 Mass. 147, 154–155, and both parties are bound if there is no doubt in regard to their personality. See *Lunn & Sweet Co.* v. *Wolfman*, 256 Mass. 436. We have decided in *Huey* v. *Passarelli*, 267 Mass. 578, that failure to comply with G. L. (Ter. Ed.) c. 110, § 5, does not render a contract void. The case differs essentially from *Werlin* v. *Equitable Surety Co.* 227 Mass. 157, where there was an allegation that the obligee was a corporation. Here no such allegation appears; and there is nothing in the policy to show that Uxbridge Auto Company was other than a trade name.

The plaintiff's testimony as to ownership of the automobile and of the business was sufficient to entitle him to go to the jury, and, taken with his possession of the policy, to sustain a finding that the policy was issued to him.

The case, especially on the issue of theft within the definition of the policy, is close; but we find no reversible error.

*Exceptions overruled.*