ASSOCIATES DISCOUNT CORPORATION *vs.* HAYNES GARAGE, INC.

SAME *vs.* SAME.

Norfolk.   October 4, 1939. — December 27, 1939.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & COX, JJ.

*Sale*, Parties. *Evidence*, Of identity, Competency. *Practice, Civil*, Parties.

To prove title of a corporation to an automobile alleged to have been converted, where there was evidence that the corporation was a successor to a partnership, that, while both were acting under the same manager, he used a printed form of bill of sale running to the partnership for a purchase of the automobile which the corporation paid for, and that at the same time the vendor delivered a "trust receipt" of the automobile stating the corporation to be the owner, further evidence should have been admitted that the use of the partnership form was due merely to temporary lack of new forms naming the corporation.

Two ACTIONS OF TORT. Writs in the Municipal Court of Brookline dated October 5, 1937.

Upon removal to the Superior Court, the actions were tried before *Williams*, J.

*K. C. Tiffin*, for the plaintiff.

*C. S. Maddock*, for the defendant.

DOLAN, J. These two actions of tort are brought by the plaintiff to recover damages for the alleged conversion of two automobiles by the defendant. The cases were tried to a jury. Before the plaintiff completed its evidence, the judge directed the jury to return a verdict for the defendant in each case. The cases come before us on the plaintiff's exception to this action of the judge and to the exclusion of certain evidence.

The Associates Discount Company, a partnership, had engaged in the business of financing the purchase of automobiles by dealers until some time in 1937, when it became incorporated under the name of Associates Discount Corporation. This corporation is the plaintiff in the present actions. After incorporation, the plaintiff's Boston branch manager, who had also been the Boston branch manager of the predecessor partnership, did business with Grannone Motors, Inc., which had a "general retail auto sales agency selling new and used cars." The plaintiff "floor-planned automobiles for Grannone . . . floor plan service means the buying and financing of automobiles by the finance company and placing them on the floor of the dealer, so that he may resell them to his retail trade." The plaintiff "floor-planned the two cars involved" in these actions for "Grannone" under the following circumstances: On July 6, 1937, after receiving notice from the Cambridge Trust Company that a certain sight draft had been drawn on "Grannone" in connection with the purchase by the latter of one of the automobiles involved, Adams, the plaintiff's local manager, or someone under his supervision, prepared a bill of sale of the vehicle in question (but including others), running from "Grannone" to the former partnership. A check of the corporation was drawn by Adams and given to the trust company in payment of and in return for the drafts, the invoices and the bills of lading. On the same day or a few days later, "Grannone" executed a "trust

receipt" covering the automobile involved in the first action, in which it was recited that the vehicle (and others not here involved) were the property of the "Associates Discount Corporation." "Grannone" received the automobile in question and sold it sometime before July 23, 1937, to the defendant, although no permission to sell had been given by the plaintiff. On July 7, 1937, the day following the execution of the bill of sale, it was sent to the home office of the plaintiff at South Bend, Indiana, which was also the home office of the partnership. About the middle of August, 1937, the bill of sale was returned to the plaintiff's Boston office, and when received an assignment in writing was pinned to it. The assignment was in the following form: "Assignment. For value received, all our rights, title and interest in the within contract and to the chattel described therein is hereby assigned to Associates Discount Corp. without recourse or liability whatsoever. Associates Discount Company, By Lew Fleming, one of the partners." The transaction with relation to the automobile involved in the second action was identical in detail, except for certain dates, and need not be reviewed.

There was evidence that on July 6, 1937, and July 12, 1937, (controlling dates,) the partnership was still doing business. At this point in the presentation of the plaintiff's cases the judge said: "You will have to straighten out this partnership and corporation, or we'll all be confused." After further testimony by Adams in explanation of the return of the bills of sale with the attached assignments from the partnership to the corporation, he was asked by counsel for the plaintiff: ". . . what is the explanation of this bill of sale made to the company with the assignment attached?" The question was objected to and excluded. Adams then testified "that the partnership did not have anything to do with these transactions," that the corporation started to operate sometime around June 1, 1937. He was then asked, "Now at that time, what did you have in the way of forms to use to do business with?" The question was objected to and excluded. The plaintiff's counsel then made the following offer of proof: "I offer to prove that

when the corporation started to do business, they didn't have all the required forms to carry on with, and consequently they adopted the practice on those forms which they didn't have at hand, to use the old form, and affected [*sic*] the assignment from the partnership to the corporation, pending the time of their printing up the necessary forms to carry on as a corporation, and for that reason, the partnership and the corporation for a period dovetailed the operation of necessity." The questions were still excluded subject to the plaintiff's exceptions, and the judge then directed the jury to return a verdict for the defendant in each case subject to the plaintiff's exception.

In the instant cases we think that the several instruments involved, that is, the checks of the plaintiff corporation which were given in payment of the sight drafts drawn upon Grannone Motors, Inc., for the purchase price of the automobiles, the bills of sale by "Grannone" to the partnership, Associates Discount Company, and the trust receipts executed by Grannone Motors, Inc., acknowledging title to the automobiles to be in the plaintiff corporation, are parts of one transaction in each case and must be considered together.

It is apparent that in the present cases there was a seeming variance in the identity of the parties concerned, since the bills of sale purported to run to the partnership, while the trust receipts ran to the corporation which, in fact, advanced the money for the purchase of the automobiles. But, since the documents are so intimately connected, we think it was competent for the plaintiff to prove by the circumstances its identity as the real vendee in the bills of sale, that the question presented an issue of fact for the determination of the jury, and that the evidence offered by the plaintiff and excluded was admissible as throwing light on that issue. *Lunn & Sweet Co.* v. *Wolfman*, 256 Mass. 436, 441, and cases cited. Am. Law Inst. Restatement: Contracts, § 235, Comment *d*.

The case is largely governed by *Lunn & Sweet Co.* v. *Wolfman*, 256 Mass. 436. In that case an innocent mistake was made by an agent of a corporation in using the name

of a corporation that had transferred its assets to the plaintiff corporation. The name used did not appear to have been an inducement of the contract, and it was held that "the identity of the party in fact making the contract may be shown and the contract enforced by that party" (page 441). See *Farnum* v. *Bankers & Shippers Ins. Co.* 281 Mass. 364, 369; 5 Williston, Contracts, § 1599 and cases cited; Am. Law Inst. Restatement: Contracts, § 235, Comment *d.*

We are of opinion that the judge erred in ruling in effect as matter of law that the plaintiff corporation was not the real party to the bills of sale of the automobiles and therefore had no title to them, and in directing a verdict for the defendant in each of the present cases. In view of this result it is not necessary to consider the effects of the assignments from the partnership to the corporation.

The entry will be

*Exceptions sustained.*